**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FRANK D. LACEY, JR.,

       Plaintiff,

v.                                   Case No. 03-CV-75023-DT

DOORSTEP SHELTER, SUBSIDIARY OF MES
INC. and JON P. RUTHERFORD,

       Defendants.

_____/

**ORDER DENYING PLAINTIFF'S "MOTION FOR SUMMARY JUDGMENT"
AND
DENYING DEFENDANTS' "MOTION FOR SUMMARY JUDGMENT"**

      Pending before the court are Plaintiff's March 31, 2005 "Motion for Summary

Judgment" and Defendants' May 27, 2005 "Motion for Summary Judgment."  The

motions have been fully briefed and the court concludes a hearing is unnecessary.  *See*

E.D. Mich. LR 7.1(e)(2).   For the reasons stated below, the court will deny both

motions.

**I.  BACKGROUND**

      On February 11, 2005, the court issued an "Order Granting Defendants' 'Motion

for Summary Judgment [As to Plaintiff's Race Discrimination Count]' and Denying

Plaintiff's 'Motion for Summary Judgment Second Count Gender Discrimination and

Racial Discrimination'" [Dkt #79].  In that order, the court stated that "Plaintiff's complaint

comprises two counts expressly claiming race and sex discrimination, but neither count unambiguously identifies a claim of retaliation discrimination under § 2000e-3(a)." (2/11/05 Order at 9.)  The court also informed Plaintiff that he could file a specific statement detailing the basis for his retaliation claim and identifying documents and witnesses in support of this claim on or before February 23, 2005, (*id.* at 12), which subsequently Plaintiff did.

The underlying dispute arises from Plaintiff's employment as a security guard at Defendant Doorstep Shelter.  Plaintiff claims that he was treated in a discriminatory manner in the course of his employment.  In his "Statement of Claim" as to his retaliation charge, Plaintiff alleges that Defendants engaged in various retaliatory acts. Plaintiff avers that he was fired on July 17, 2002, after notifying his immediate supervisor (in writing) on July 12, 2002 that he felt that female employees were being given preferential treatment.  (Pl.'s Statement of Claim at 2.)  Plaintiff then filed an EEOC complaint on August 2, 2002.  (*Id.*; Defs.' Mot. at ¶7.)  Later, Plaintiff and Defendants entered into a settlement agreement, and Plaintiff returned to work on October 26, 2002.  (Pl.'s Statement of Claim at 3; Defs.' Mot. at ¶8.)  Plaintiff alleges that when he returned to work he was "subject to different terms and conditions of employment" due to "his having filed the EEOC charge."  (Pl.'s Statement of Claim at 3.) Plaintiff filed a second EEOC complaint in March 2003.  (*Id.* at 4; Defs.' Mot. at ¶9.) Plaintiff lists a number of alleged retaliatory acts that he experienced as a result of filing these charges, including Defendants' coercion of other employees to write him up, failure to comply with certain provisions of the settlement agreement they entered into, provision of misleading information during the EEOC investigation of Plaintiff's claim,

2

and their final termination of Plaintiff on July 11, 2003.  (Pl.'s Statement of Claim at 3-4;

Pl.'s Mot. at Ex. 1.)  Defendants argue, however, that the conduct alleged by Plaintiff

"only minimally affected the terms and conditions of his employment and do not reflect a

material change."  (Defs.' Mot. at 4.)  Defendants point to the depositions of two

employees who wrote Plaintiff up to demonstrate that they were telling the truth in their

reports, even if they were told to make the reports.  (*Id.* at 5-6; Walker Dep. at 22-25.)

In their motion for summary judgment, Defendants argue that Plaintiff was

terminated because of his "poor insight and lack of ability to do his job."  (Defs.' Mot. at

¶17.)  To that end, Defendants assert that Plaintiff "made the decision to have a fire exit

door taped shut[,] which was an unacceptable safety situation."  (*Id.* at ¶16.)

Plaintiff argues that this alleged reason is pretextual and he has produced a letter

dated April 6, 2003 (approximately four weeks after he filed his second EEOC complaint

and more than three months before his actual termination) that Defendants sent to him

describing what his benefits options would be following his termination.  (Pl.'s Mot. at

Ex. 2.)  Plaintiff argues that this letter demonstrates that Defendants intended to

terminate him before the door incident that occurred on May 19, 2003.  (*Id.* at 2.)

## II.  STANDARD

Federal Rule of Civil Procedure 56, which governs summary judgment motions,

provides, in part, that:

> [t]he judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to a judgment as a
> matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating that there is

no genuine issue as to any material fact, and a summary judgment is to be entered if

the evidence is such that a reasonable jury could find only for the moving party.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]here is no issue for trial

unless there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party."  *Anderson*, 477 U.S. at 250.  In assessing a summary judgment

motion, the court must examine any pleadings, depositions, answers to interrogatories,

admissions, and affidavits in a light that is most favorable to the non-moving party.  Fed.

R. Civ. P. 56(c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### III. DISCUSSION

To establish a claim of retaliation under Title VII, Plaintiff must establish that: "1)

he engaged in activity protected by Title VII; (2) the exercise of his civil rights was

known to the defendant; (3) thereafter, the defendant took an employment action

adverse to the plaintiff; and (4) there was a causal connection between the protected

activity and the adverse employment action."  *Nguyen v. City of Cleveland*, 229 F.3d

559, 563 (6th Cir. 2000).  If and when a plaintiff has established a prima facie case of

retaliation, the burden of production of evidence shifts to the employer to "articulate

some legitimate, nondiscriminatory reason" for its actions.  *Morris v. Oldham County*

*Fiscal Court*, 201 F.3d 784, 792-93 (6th Cir. 2000) (citing *McDonnell Douglas Corp.* v.

*Green*, 411 U.S. 792, 802).  "The plaintiff, who bears the burden of persuasion

throughout the entire process, then must demonstrate 'that the proffered reason was not

the true reason for the employment decision.'"  *Id.* at 793 (citing *Texas Dept. of*

*Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

4

## A. Defendants' Motion for Summary Judgment

The parties agree that Plaintiff filed two EEOC complaints, which qualifies as a protected activity under Title VII.   Further, Plaintiff's activities were known to Defendant. Thus, there is no dispute that Plaintiff can establish the first two elements of his prima facie case.

The dispute in this case, therefore, revolves around whether Plaintiff can produce sufficient evidence to establish the third and fourth elements of a prima facie case of retaliation, i.e., whether Defendants took an employment action adverse to Plaintiff and whether there was a causal connection between Plaintiff's protected activity and the allegedly adverse employment action.  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  Defendants argue that "[m]any of Plaintiff's allegations of conduct which he claims to be retaliatory when he returned to his employment only minimally affected the terms and conditions of his employment and do not reflect a material change." (Defs.' Mot. at 4.)  Defendants further aver that Plaintiff's claim that the security director made shift changes for Plaintiff's subordinates without informing him was reviewed by the EEOC, and the agency found no evidence that this was done because of his previous EEOC charges.  (*Id.*)  In addition, Defendants argue that the alleged conduct preceding his termination, such as violating the terms of the settlement and encouraging other employees to write reports against Plaintiff are not sufficient to constitute actions that substantially affect the terms of his employment.  Even if the court were to accept that these actions cannot, as a matter of law, constitute adverse employment actions, Defendants cannot take issue with Plaintiff's contention that his termination would be a substantial change in his employment status.  Thus, at a minimum, Plaintiff's

5

termination can constitute an adverse employment action in satisfaction of the third element of Plaintiff's prima facie case.  *Shefferly v. Health Alliance Plan of Michigan*, 2004 WL 784117, *6 (6th Cir. 2004).

In the analysis of the fourth element of plaintiff's retaliation claim, the court notes that Plaintiff's burden of establishing a prima facie case of retaliation is "not onerous, but one easily met."  *Nguyen*, 229 F.3d at 563 (citing *Moon v. Transport Drivers Inc.*, 836 F.2d 226, 230 (6th Cir. 1987)).  Indeed, no one factor is dispositive in the causal connection analysis, but evidence that the defendant treated plaintiff differently from a comparable employee or that the adverse action was taken shortly after the plaintiff engaged in the protected activity is relevant.  *Id.*

Defendants argue that Plaintiff was fired for his inability to do his job, and that Plaintiff has not offered any evidence of pretext and retaliation.  (Defs.' Mot. at 5.) Plaintiff, however, grounds his argument on the holdings in *Nguyen* and *Moon*, i.e. that "in certain distinct cases where the temporal proximity between the protected activity is acutely near in time, . . . close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."  (Pl.'s Mot. at 2.)

Temporal proximity is indeed a *factor* to be considered as "a causal link can be shown by either of two methods: (1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation. . . . However, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence."  *Nguyen*, 229 F.3d at 566.

A time line of the significant events illustrates a temporal connection between Plaintiff's protected activity and his final termination:

6

March 5, 2003...Plaintiff files second EEOC complaint
April 6, 2003............Letter from Defendant referring to Plaintiff's termination
May 19, 2003..........Plaintiff directs door to be taped shut
May 27, 2003..........Plaintiff ordered off work without pay
July 11, 2003..........Plaintiff terminated

Although a temporal connection alone is not enough to support an inference of retaliation, when weighing the evidence presented in its totality (even beyond the temporal proximity element) a reasonable jury could find that there was a causal connection between Plaintiff's filing of his second EEOC charge and his termination. There is, therefore, an issue of material fact relating to whether there was a causal connection between Plaintiff's participation in a protected activity and the adverse employment action.

Where, as in the instant case, a plaintiff can establish a genuine issue of material fact exists with respect to the prima facie case, a defendant may still be able to obtain a summary judgment if it can be shown as a matter of law that Defendant had a legitimate business reason for taking the adverse employment action and Plaintiff cannot establish pretext. *Morris*, 201 F.3d at 792-93.

Defendants have pointed out that "when working as a [s]ecurity [s]hift [s]upervisor at Doorstep Shelter, [Plaintiff] directed . . . two homeless consumers [to] apply tape to the edges of an emergency fire exit leading out to the only wheelchair ramp in that section of the building. . . .  He clearly was not satisfactorily performing." (Defs.' Mot. at 2-3.)  Even if the court were to find that this fact was undisputed and sufficient to justify his termination, Plaintiff has submitted evidence that creates a triable issue of fact with respect to pretext, presenting one document: the letter dated April 6,

7

2003.  It appears from the content of that letter that the decision to terminate Plaintiff's employment had been made by the time the letter was authored.  Because the letter existed before the door-taping incident occurred, a reasonable jury could find that Defendants' decision to terminate Plaintiff had been reached due to something other than the door taping incident.

Although the pleadings are voluminous, the court can find no response offered by Defendants explaining or otherwise commenting upon the significance of the April 6 letter, and must conclude that this documentary evidence offers enough for Plaintiff to withstand summary judgment.

### B.  Plaintiff's Motion for Summary Judgment

Plaintiff's evidence is not sufficient to grant summary judgment in his favor.  As discussed above, there are genuine issues of material fact concerning the causal connection between Plaintiff's engagement in protected activity and his termination when the evidence is considered in its totality.  Further, while Plaintiff alleges that Defendants "papered Plaintiff's file after he returned to employment" by forcing employees to report Plaintiff for alleged sexual harassment, (Pl.'s Mot. at 4, Ex. 5), Defendants argue and offer deposition testimony that these reports are true and therefore not retaliatory.  (Defs.' Mot. at 5-7; Walker Dep. at 22-25.)  Additionally, although Plaintiff has presented sufficient evidence on this point to defeat Defendants' motion, this evidence is not so one-sided as to correspondingly require the court to grant Plaintiff's motion.  Plaintiff does not have direct evidence of retaliation sufficient to establish his claim as a matter of law, and Defendants have produced sufficient explanations and evidence to cast doubt on Plaintiff's arguments.  Accordingly, the court will deny both motions and allow the case to proceed to trial.

**IV.  CONCLUSION**

IT IS ORDERED that Plaintiff's "Motion for Summary Judgment" [Dkt. # 87] is

DENIED.

IT IS FURTHER ORDERED that Defendants' "Motion for Summary Judgment"

[Dkt. # 102] is DENIED.



 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  September 23, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 23, 2005, by electronic and/or ordinary mail.


 S/Lisa Wagner

Case Manager and Deputy Clerk
(313) 234-5522